

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2005

# Mohabir v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2122

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Mohabir v. Atty Gen USA" (2005). *2005 Decisions.* Paper 720.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/720

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2122

CAROLINE MARCIA MOHABIR,

Petitioner

v.

\*ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent

(\*Substituted pursuant to Rule 43(c), Fed. R. App. P.)

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA No. A79-414-990)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2005
Before: SCIRICA, *Chief Judge*, ALITO and RENDELL, *Circuit Judges*

(Filed August 9, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Caroline Marcia Mohabir seeks review of a final order removing her to Guyana.

The immigration judge rejected her application for asylum and her request for

withholding of removal and the Board of Immigration Appeals dismissed her appeal without opinion. We have jurisdiction under 8 U.S.C. § 1252 to review the order of removal. We will affirm.

## Background

Mohabir is a citizen and native of Guyana. Her ethnic background is Indo-Guyanese. On July 13, 2001, she tried to enter the United States using a forged passport. She was detained and the Immigration and Naturalization Service[1] initiated removal proceedings. Shortly thereafter she was released from custody.

Mohabir subsequently conceded removability and applied for asylum and withholding of removal under the Immigration and Nationality Act and the Convention Against Torture. She claimed past persecution and a fear of future persecution in Guyana based on her political opinion, race and ethnicity. Her application stated the following version of events in support of her claims: After her adopted father died in March 2000 Mohabir went to live with an aunt. The aunt lived in a historical house called the "House of 99 Windows," which was on a coconut plantation. The aunt was politically involved and Mohabir became interested in politics. She joined the predominantly Indo-Guyanese People's Progressive Party (PPP) and put up posters and distributed fliers before the March 2001 national elections. The PPP won the elections whereupon members of the

---

[1]Beginning on March 1, 2003, INS became a part of the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

main opposition party - the predominantly Afro-Guyanese People's National Congress (PNC) - responded with violence. On the night of May 5, 2001, PNC members set fire to the "House of 99 Windows" because Mohabir and her aunt had worked for the PPP during the elections. The house burned to the ground, but Mohabir and her aunt saved themselves by jumping out of a window. Afterwards Mohabir lived with an uncle. During that time she was harassed and threatened by PNC members, one of whom threatened to rape and kill her.

After a merits hearing the IJ denied relief and ordered Mohabir's removal from the United States. The IJ found Mohabir not credible because he perceived several inconsistencies between her asylum application and testimony and her documentary evidence and airport statements. The IJ stated that none of the newspaper articles submitted by Mohabir established the causes or identified the perpetrators of the fire. Furthermore, he found the news reports to imply that the "House of 99 Windows" was just an uninhabited historical building and family museum. The IJ found it "extremely awkward" that the persons identified in the newspaper as the owners of the property - a Mr. Dennis Rajnarine and his wife Gail - made no mention during their interview of the fact that their relatives - Mohabir and her aunt - were actually living in the house and had survived the fire. The IJ also pointed out that Mohabir's statement given during the initial interview at the airport and even her amendments to that statement the day after failed to disclose the events of May 5, 2001. The IJ concluded: "Such an omission is crucial and

3

affects her entire claim and her credibility. The court is now convinced that [Mohabir's] real reasons in coming to the United States were simply to join her adopted family in this country."[2] The IJ noted that Mohabir had tried to gain admission to the United States

---

[2]In her interview with the immigration officer when she sought admission, Mohabir stated that she came to the United States to live with her brother. When asked whether she had "any fear or concern about being returned to her home country or being removed from the United States," she replied: "[n]o." One day later, however, she claimed to fear future persecution in Guyana. The following interview ensued:

Q. Explain your fear to me today, that you did not have yesterday?
A. Yesterday, I did not know what all this is about that I was getting into, but now I realize what is my true faith.
Q. Has anything happened to you in your country to make you feel this way?
A. Yes, people are fighting and throwing china bombs and they are burning tires in the streets and beating you up.
Q. Has any of this happened to you?
A. The people who are protesting told me they would rape me.
Q. Have you or any member of your family ever been persecuted in Guyana?
A. No.
Q. Are you or any member of your [sic] part of any political party or activist group?
A. No.
Q. Why did you leave your home country or country of last residence?
A. Because my brother have to go for a operation and he wanted me to come. . . .
Q. Do you have any fear or concern about being returned to your home country or being removed from the United States?
A. Yes, because of the way our country is right now, complicated.
Q. Would you be harmed if you are returned to your home country or country of last residence?
A. Yes, because I am frightened to walk the streets, you cannot have a piece of gold on or money and you cannot walk the streets at night.

4

legally since 1993[3] before arriving here with a forged passport in 2001.

The only issue for us on review is the IJ's credibility determination.

## Discussion

Mohabir contends the IJ largely based the adverse credibility finding on the erroneous assumption that the "House of 99 Windows" was just a museum. She claims she lived and worked in the house and that although the house was a museum it was used for other purposes as well. Mohabir also contends the IJ erroneously assumed the current owner of the house - Mr. Dennis Rajnarine - to be an only child and that therefore she had misrepresented her mother to be his sister.

Where the BIA affirms without opinion, the IJ's decision becomes the final agency determination for purposes of our review. 8 C.F.R. § 1003.1(e)(4); *Dia v. Ashcroft*, 353 F.3d 228, 243, 245 (3d Cir. 2003) (en banc). Our standard of review is prescribed by statute: "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The IJ's determination "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Dia*, 353 F.3d at 247. "Adverse credibility findings are afforded substantial deference so long as the findings are supported by specific cogent reasons.

---

[3]Mohabir applied for a visitor visa in 1993. She is also the beneficiary of a fourth preference petition filed by her brother in 1995. *See* 8 U.S.C. § 1153(a)(4).

5

The reasons must be substantial and bear a legitimate nexus to the finding." *Cao v. Ashcroft*, 407 F.3d 146, 152 (3d Cir. 2005) (quoting *Gao v. Ashcroft*, 299 F.3d 266, 276 (3d Cir. 2002)).

In this case, we are unable to say that any reasonable factfinder would have been compelled to conclude to the contrary. The IJ disbelieved Mohabir because he saw inconsistencies between her allegations of the fire on May 5, 2001, and several newspaper articles covering the incident. He pointed out that the news reports neither established the causes nor identified the perpetrators of the fire. Furthermore, the IJ concluded the news reports imply that the "House of 99 Windows" was only an uninhabited family museum and historical building. Mohabir contends one of the articles actually supports her story, because it refers to the house as a "home in the country where the owner also had an office, from where he managed the coconut plantation." The article also states the house was "well-kept." Mohabir argues it would be plausible that such a house would have live-in employees. However, the fact remains that none of the news reports mention anyone living or being in the house at the time of the fire. Mohabir or her aunt were never mentioned even though two of the articles quote the owners of the house to whom Mohabir claims to be related.[4]

---

[4]Contrary to Mohabir's contention on appeal, the IJ did not explicitly rule out the possibility that the owner of the house - Dennis Rajnarine - had any siblings and therefore did not rule out that Mohabir and Dennis Rajnarine were related.

The IJ also pointed out that Mohabir's statement at the airport and even her amendments the day after failed to disclose the events of May 5, 2001. Her stated reason for coming to this country at that time was that she desired to join her brother. Although airport interviews are "usually not valid grounds upon which to base a finding that an applicant is not credible," *Dia*, 353 F.3d at 257 (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 164 (3d Cir. 1998)), here the inconsistencies lend support to the IJ's determination, because the interviews were conducted under oath in Mohabir's mother tongue (English).

Also, the IJ mentioned Mohabir's prior attempts to enter the United States legally. In the end, she used a forged passport because the priority date on her fourth preference visa had yet to become current.

In sum, we are unable to say a reasonable factfinder would have been compelled to conclude Mohabir's testimony credible. Substantial evidence supports the Immigration Judge's decision. Under the requisite standards, the harsh conditions alone under which she had to live after the 2001 elections do not entitle her to relief. Therefore, Mohabir's claims must fail.

## Conclusion

For the foregoing reasons, we will affirm the BIA's order and deny the petition for review.